Erma J. BUCHANAN, Plaintiff,

v.

Mark A. LOTT and Schneider National Carriers Defendants.

No. CIV.02–3206(HAA).

United States District Court,
D. New Jersey.

April 1, 2003.

Richard B. Tucker, Jr., Miller, Miller & Tucker, P.A., New Brunswick, NJ, for Plaintiff.

Michael J. Palma, Nowell Amoroso Klein Bierman, P.A., Hackensack, NJ, for Defendants.

## AMENDED OPINION & ORDER

ACKERMAN, Senior District Judge.

This case comes before the Court on Plaintiff's motion to remand this action to state court. For the reasons outlined below, Plaintiff's motion is GRANTED.

### Background

In her complaint, Plaintiff Erma Buchanan ("Plaintiff") alleges the following facts: On January 25, 2002, a commercial truck owned by Defendant National Carriers, Inc. ("National") and driven by National's employee, Defendant Mark Lott ("Lott"), collided with Plaintiff's automobile while Plaintiff was driving. At the time of the collision, Lott was acting within the scope of his employment with National. As a result of the collision, Plaintiff was violently thrown about in her vehicle, causing "severe, painful bodily injuries, including multiple contusions and abrasions about her body, which injuries caused her great pain and suffering, incapacitated her from pursuing her usual employment and other activities, and have left her with permanent disabilities that will in the future similarly incapacitate her, cause her pain and suffering, and require medical treatment." Complaint, Count 1, ¶ 4. In addition to seeking compensation for her injuries, Plaintiff also seeks recovery for damages to her automobile resulting from the collision.

Plaintiff filed her Complaint in the Superior Court of New Jersey, Middlesex County, on March 15, 2002. Defendants, however, did not receive notice of the complaint until June 11, 2002. On July 2, 2002, Defendants filed a Notice of Removal with this Court. On July 25, 2002, Plaintiff filed a motion to remand the matter to state court.

### Analysis

There appears to be complete diversity among the parties pursuant to 28 U.S.C. § 1332: Plaintiff is a New Jersey resident, while Defendant Lott is a resident of Wisconsin and National is an Illinois corporation.[1] The main dispute at issue concerns whether, in addition to diversity, Plaintiff's complaint alleges facts sufficient to meet the $75,000 amount-in-controversy requirement for this Court to retain jurisdiction under 28 U.S.C. § 1332.

### A. Implications of Procedural Requirements of 28 U.S.C. § 1446 and New Jersey Court Rule 4:5–2

The procedural requirements of removal under 28 U.S.C. § 1446(b) provide as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]

28 U.S.C. § 1446(b) (2003).

New Jersey Court Rule 4:5–2 requires that "[i]f unliquidated money damages are

---

1. In Defendants' brief, Defendants state that National "is located in Illinois." For purposes of this motion, the Court will assume that this statement indicates that National's principal place of business is Illinois, and that National is incorporated in Illinois. As discussed below, because this Court concluded that the damages alleged in Plaintiff's complaint failed to meet the amount-in-controversy requirement of 28 U.S.C. § 1332, National's actual principle place of business and state of incorporation are not relevant to the determination of this motion.

claimed in any court, other than the Special Civil Part, the pleading shall demand damages generally without specifying the amount..." N.J.Ct. R. 4:5–2. Pursuant to this rule, Plaintiff's complaint did not specify the amount of damages she demanded. Defendants argue that Rule 4:5–2, in combination with the requirements of 28 U.S.C. § 1446, place Defendants in a jurisprudential straight jacket. Because a plaintiff filing a civil action in New Jersey state court is precluded from specifying an amount of damages, it may be difficult for a defendant to determine whether the complaint alleges damages exceeding $75,000. Nevertheless, the 30–day time limit for removal pursuant to 28 U.S.C. § 1446 begins to run from the time the defendant receives a complaint setting forth a removable claim. If the defendant waits until the litigation proceeds further in state court and then determines that the amount may exceed $75,000, the 30–day window of opportunity for removal may have expired. Defendants cite several cases by Judge Lechner in which defendants attempting to remove suffered this unhappy fate.

In *Carroll v. United Air Lines, Inc.*, 7 F.Supp.2d 516 (D.N.J.1998), the plaintiff filed a complaint in state court for injuries allegedly sustained as a result of the defendant's negligence. The complaint did not contain a request for a specific amount of damages, but claimed that the plaintiff had suffered "injuries causing disability, impairment, loss of enjoyment of life, pain and suffering, and he will suffer in the future." 7 F.Supp.2d at 518. Four months later, in response to a request for damages pursuant to the New Jersey court rules, the plaintiff demanded $2 million in damages. After receiving this response, the defendant filed a motion for removal in federal court. The defendant argued that the action first became removable after the plaintiff filed the $2 million demand, because prior to that time it was

not apparent that the plaintiff's complaint sought damages sufficient to meet the amount-in-controversy requirement of 28 U.S.C. § 1332. In rejecting this argument, Judge Lechner held that the defendant could reasonably have ascertained from the complaint that the amount in controversy exceeded $75,000, notwithstanding the fact that the complaint did not demand a specific amount of damages. The court noted that " 'courts have held that allegations of severe injuries along with pain and suffering will alert [the] defendant that an amount in excess of [the jurisdictional amount] is at issue' and trigger the running of the thirty-day removal period." 7 F.Supp.2d 516, 521 (quoting *Turner v. Wilson Foods Corp.*, 711 F.Supp. 624, 626 (N.D.Ga.1989)).

Similarly, in *Garofalo v. Medtronic Inc.*, 1997 WL 1049566 (D.N.J.1997), the plaintiff sued the defendants in state court for damages due to defects in a pacemaker manufactured by the defendants. In the complaint, the plaintiff alleged "serious personal injuries causing significant disfigurement, permanent loss...[and] permanent consequential limitation of use of a body function or system..." and that the plaintiff "has been caused and in the future will be caused great pain and suffering." 1997 WL 1049566 at *1. Although the plaintiff did not indicate a specific amount of damages in the complaint, Judge Lechner held that the severity of the injuries pled in the complaint was sufficient to put the defendant on notice that the amount in controversy exceeded $75,000. *Id.* See *also Teajman v. Frigoletti*, 1997 WL 1067639 (D.N.J.1997) (J. Lechner) (remanding case on similar grounds).

Under Judge Lechner's approach, therefore, it would appear that the only prudent course of action for a defendant in a case with unspecified damages is to remove as soon as possible, in order to avoid a re-

mand for failure to comply with the procedural requirements of section 1446. Moreover, the holdings of these opinions seem to imply that a simple statement of "severe" or "serious" injuries, along with pain and suffering, is sufficient to put a defendant on notice that the claim could amount to over $75,000. Nevertheless, other courts in this district have adopted a different approach to this problem.

In *Vartanian v. Terzian,* 960 F.Supp. 58 (D.N.J.1997) (J. Rodriguez), the plaintiff filed a complaint in state court, and, pursuant to the New Jersey court rules, did not specify the amount of damages sought. Five weeks later, the defendant demanded a statement of damages, and the plaintiff responded that the damages claimed were $1 million. The defendant then filed a notice of removal. This notice was filed 69 days after the original complaint was received, and 18 days after the statement of damages was received. *Id.* at 58. The plaintiff argued that the 30–day clock for removal pursuant to section 1446 began when the defendant received the original complaint, and therefore that the case should be remanded because the notice of removal was not timely filed. The defendant, on the other hand, argued that the 30–day clock was only triggered by the statement of damages, because only at that point did the defendant first ascertain that the case was removable.

In analyzing this issue, the *Vartanian* court cited to *Foster v. Mutual Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 53 (3d. Cir.1993), in which the Third Circuit held that in determining when a defendant first ascertained that a case was removable, "the relevant test is not what the defendants purportedly knew, but what [the pleadings or other documents] said." As Judge Rodriguez noted, there is clearly a tension between the federal court's reliance upon demands made in pleadings and other documents and the New Jersey

court rule prohibiting pleadings from specifying a dollar amount for unliquidated damages.

To resolve this tension, Judge Rodriguez turned to a Fifth Circuit case, *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir.1992). In *Chapman,* the Fifth Circuit adopted a bright-line rule requiring that a plaintiff who wished to trigger the 30–day period under section 1446 must include in his initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount. Judge Rodriguez explicitly adopted this approach, holding that where the plaintiff did not include such an allegation in the complaint, and it was not otherwise apparent from the complaint that the amount in controversy would exceed $75,000, the 30–day clock under section 1446 would not begin to run at the time the defendant first received the complaint. Instead, the time for removal of the complaint would be governed by the second paragraph of section 1446, which provides for removal within 30 days of receiving "a copy of an amended pleading, motion, order, or other paper from which it may be first ascertained that the case is one which is or has become removable." 960 F.Supp. 58 at 62 (quoting 28 U.S.C. § 1446). Thus, in the *Vartanian* case, Judge Rodriguez held that the 30–day clock was not triggered until the defendant had received the plaintiff's statement of damages.

Although this issue is not directly before the Court because Plaintiff's motion for remand does not rely upon the 30–day procedural rule of section 1446, resolution of this issue has significant implications for the determination of Plaintiff's motion. If the Court adopts Judge Lechner's approach, the Court would be inclined to deny Plaintiff's motion and retain jurisdiction over the case. Under this reasoning, Plaintiff's complaint would have provided

sufficient notice to Defendants that the amount in controversy could exceed $75,000, and if Defendants failed to immediately remove, they would forever forfeit their opportunity to do so. It is the view of this Court, however, that Judge Lechner's approach would tip the scales too far in favor of retaining federal jurisdiction over cases which are unlikely to ultimately meet the amount-in-controversy requirement of section 1332. At least one other court which has addressed this question has also reached this conclusion. *See Entrekin v. Fisher Scientific, Inc.*, 146 F.Supp.2d 594 (D.N.J.2001) (adopting Judge Rodriguez's approach and rejecting Judge Lechner's approach on issue of when 30–day issue begins to run under section 1446).

If, on the other hand, the Court adopts Judge Rodriguez's approach, the Court would be inclined to grant Plaintiff's motion and remand the case, because Defendants would not be precluded from removing if it later became clear that the value of Plaintiff's claims exceeded $75,000. Nevertheless, Judge Rodriguez's approach is not without difficulties. Although the Fifth Circuit's rule will likely promote certainty and judicial efficiency, it is not clear that this proposal can be reconciled with the New Jersey court rules. In *Vartanian,* the court noted that "[New Jersey Court] Rule 4:5–2 does not prohibit the plaintiff from making a specific allegation that the damages are in excess of the federal jurisdictional amount." 960 F.Supp. 58, 61. The court fails, however, to cite any case law in support of this proposition, and the plain language of the rule implies other-

wise. Indeed, it is not difficult to imagine a New Jersey state court holding that a plaintiff's allegation as to damages in excess of the federal jurisdictional amount did, in fact, violate the pleading requirements of the court rules. In any case, the federal court has neither the power nor the expertise necessary to expound upon state court rules. This Court therefore cannot fully endorse the *Vartanian* approach.

The Court acknowledges the potential problems a defendant faces as a result of the conflicting pressures of New Jersey Court Rule 4:5–2 and 28 U.S.C. § 1446. Nevertheless, because the Court declines to adopt the approaches of either Judge Lechner or Judge Rodriguez, the existence of this procedural quagmire will not ultimately dictate the outcome of Plaintiff's remand motion.[2] Instead, the Court will resolve Plaintiff's motion based upon the allegations as set forth in the complaint, without dwelling further upon the procedural implications of this decision.

## B. Burden of Proof

As the party invoking federal jurisdiction, Defendants bear the burden of demonstrating the appropriateness of removal. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d. Cir.1990). Where diversity of citizenship is the sole basis of federal jurisdiction, the defendant must establish that the amount in controversy exceeds $75,000. *Meritcare Incorporated v. St. Paul Mercury Insur. Co.*, 166 F.3d 214, 222 (3d. Cir.1999).

2. The court does note, however, that there appears to be a way for defendants to safely avoid the procedural problems discussed above. New Jersey Court Rule 4:5–2 provides that "[u]pon service of a written request by another party, the party filing the pleading shall within 5 days after service thereof furnish the requesting party with a written statement of the amount of damages claimed." Therefore, a defendant who wishes to preserve his right to removal could file a demand for statement of damages immediately upon receiving the complaint. Because the plaintiff must respond within five days, the defendant would then have 25 days in which to decide whether removal was appropriate.

In a case such as the instant case, where Plaintiff's complaint does not specify an amount of damages, the Court must independently appraise the plaintiff's claims as set forth in the complaint, and determine the amount in controversy "by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir.1993). "When it appears to a legal certainty that the plaintiff was never entitled to recover the minimum amount set by Section 1332, the removed case must be remanded even if the jurisdictional deficiency becomes evident only after trial." *Meritcare*, 166 F.3d 214 at 217 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

In applying these precepts, courts both within and outside this circuit have split over the appropriate standard which should be employed to measure the amount in controversy. *See e.g., Irving v. Allstate Indemnity Co.*, 97 F.Supp.2d 653, 654 (E.D.Pa.2000) (noting that "[c]ourts in the Third Circuit are unencumbered by consistency in their characterization of defendant's burden of proving the amount in controversy on a motion to remand."). One reason for the lack of clarity in this area of the law is that, as a general matter, federal appeals courts are precluded from reviewing remand orders. 28 U.S.C. § 1447(d) ("[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise.").[3]

This opinion need not repeat the exhaustive analysis of this issue already undertaken by several district courts in the Third Circuit. *See, e.g., Penn v. Wal–Mart Stores, Inc.*, 116 F.Supp.2d 557 (D.N.J.2000). Courts faced with this question generally fall into two camps. Some courts, citing to the Supreme Court's language in *St. Paul Mercury Indemnity v. Red Cab*, have required the removing defendant to prove to a legal certainty that the plaintiff's claims exceed the amount-in-controversy threshold of 28 U.S.C. § 1332. *See, e.g., International Fleet Auto Sales, Inc. v. National Auto Credit*, 1999 WL 95258 (E.D.Pa.1999) (J. Kauffman); *Johnson v. Costco Wholesale*, 1999 WL 740690 (E.D.Pa.1999). In *International Fleet*, Judge Kauffman reasoned that this approach is appropriate because the same standard should be applied in a removed case as to a case originally filed in the district court. *International Fleet*, 1999 WL 95258 at *4, fn. 7. Moreover, while acknowledging that the Third Circuit has not squarely addressed this question, Judge Kauffman argued that dicta from other Third Circuit cases indicated that the court had adopted the "legal certainty" standard. *Id.* (citing *Angus v. Shiley*, 989 F.2d 142; *Meritcare*, 166 F.3d 214).

Other courts, however, have adopted a preponderance of the evidence standard, requiring a removing defendant merely to establish that it is more likely than not that the value of the plaintiff's claims exceeds $75,000. *See, e.g., Penn v. Wal–Mart Stores, Inc.*, 116 F.Supp.2d 557 (D.N.J.2000) (J. Cooper); *Hayfield v. Home Depot U.S.A., Inc.*, 168 F.Supp.2d 436 (E.D.Pa.2001). In *Wal–Mart*, Judge Cooper argued that dicta from the Third Circuit did not clearly establish one standard, and that, under these circumstances, the preponderance of the evidence stan-

**3.** The Third Circuit has held, however, that section 1447(d) does not preclude appellate review of cases remanded due to procedural defects. *In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 448 (3d. Cir.2000). Nevertheless, section 1447(d) continues to preclude the appellate courts from reviewing orders of re- mand based upon subject matter jurisdiction, and therefore the Third Circuit has not had the opportunity to speak directly on the issue of which standard to employ in measuring the amount in controversy for purposes of determining subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

dard avoids the confusion of the alternatives. Judge Cooper also noted that "[t]he legal certainty test...inappropriately requires the defendant to 'research, state and prove the plaintiff's claim for damages," while the preponderance test "ensures that the plaintiff remains to some extent the master of the claim." 116 F.Supp.2d 557, 567 (internal citations omitted).

As courts and commentators have noted, either alternative presents potential problems. If, on the one hand, this Court adopts an overly stringent standard, a removing defendant may be deprived of his right to a federal forum, thus thwarting Congressional intent in permitting removal of actions under section 1441. On the other hand, if this Court adopts an overly lenient standard, the Court risks undermining the $75,000 amount-in-controversy requirement of section 1332. Fortunately, however, the Court need not delve into this issue for purposes of resolving this motion, because even under the more lenient preponderance of the evidence standard, Defendants have failed to demonstrate that Plaintiff's claims exceed the jurisdictional amount-in-controversy requirement.

## C. Analysis of Amount in Controversy

■ Turning now to the facts of the instant case, the question before the Court is relatively straightforward: have Defendants demonstrated, by a preponderance of the evidence, that it is more likely than not that the value of Plaintiff's claims exceeds $75,000? The case of *Penn v. Wal–Mart Stores* is instructive in this regard. In that case, the plaintiff alleged "severe injuries which required medical treatment," that the plaintiff "continues to suffer pain as a result of these injuries," and asserted a claim for loss of consortium on behalf of Plaintiff's husband. 116 F.Supp.2d at 559. The plaintiff did not

specify an amount of damages sought, but did indicate in the complaint that her medical expenses exceeded $25,000. The plaintiff's accompanying affidavit certified that the plaintiff's medical bills were approximately $2,700, and that, while these bills were likely to increase in the future, they would remain substantially below $75,000. *Id.* at 560. In support of its motion for removal, the defendant cited the possibility of increased medical bills, and argued that the allegation of a "severe knee injury" was sufficient to meet the amount in controversy, because "in this day and age, it is not unusual, nor is it unexpected, that a jury will return a verdict in excess of $75,000" for such an injury. *Id.*

The court, applying the preponderance of the evidence standard, reasoned that "[w]hile these contentions may indicate that it is possible for the claims to exceed the minimal amount requirement, they certainly do not demonstrate that it is more likely than not that they do." *Id.* at 567. The court also noted that the plaintiff's complaint did not refer to any loss of work, lost wages, or other factor that might demonstrate a likelihood of higher recovery. *Id.* Under these circumstances, the court granted the plaintiff's motion for remand.

As in *Wal–Mart*, Plaintiff in the instant case has alleged injuries without specifying damages. Plaintiff submitted an affidavit stating that her medical bills from the accident amounted to $1,517.74 (Affidavit of Richard B. Tucker, Ex. B). As in *Wal–Mart*, Plaintiff in the instant case has claimed that her medical expenses will continue, although, unlike the plaintiff in that case, Plaintiff here has never attempted to quantify her future medical expenses beyond her reported amount. Finally, although Plaintiff in our case has claimed that her injuries "incapacitated her from pursuing her usual employment and other activities," Plaintiff has not sought any

damages resulting from any lost wages as a result of the injury. Complaint, Count 1, ¶ 4

Defendants argue, however, that the cases decided by Judge Lechner (discussed *infra* ) have facts which are particularly analogous to the instant case. Defendants argue that those cases stand for the proposition the severity of the injuries pled in the complaint are sufficient to put the defendant on notice ·that the amount in controversy exceeded $75,000. While the Court has rejected the reasoning behind those cases for reasons discussed above, it is also important to note that there are significant distinctions between the facts of the instant case and the cases Defendants cite in their brief. In *Carroll v. United Air Lines,* the court noted that Plaintiff's complaint alleged that the defendant's conduct constituted "willful misconduct" under the terms of the Warsaw Convention and Montreal Agreement (collectively, "the Warsaw Convention"). Because the Warsaw Convention limits an air carrier's liability to $75,000 unless the plaintiff can prove the conduct of the defendant amounted to "willful misconduct", this allegation alone was a clear indication that the plaintiff's claims met the amount-in-contro-

versy requirement. *Carroll,* 7 F.Supp.2d at 522–23. There is no such indication in this case.

Similarly, in *Garofalo v. Medtronic,* the plaintiff's allegation of permanent loss of the use of her heart is different in kind and degree from the "multiple contusions and abrasions" alleged in the instant case. As such, the injuries alleged in *Garofalo* would be sufficient to meet the minimum $75,000 threshold, while the injuries alleged to Plaintiff in our case are insufficient to do so.[4]

Finally, Defendants emphasize Plaintiff's allegation of "great pain and suffering," arguing that a jury could award Plaintiff damages in excess of $75,000 based upon this claim. It is the view of this Court that an allegation of "great pain and suffering" is insufficient to transform an otherwise non-removable claim into one which would meet the amount-in-controversy requirement.[5] The Court acknowledges that it is conceivable that a reasonable jury could award Plaintiff damages in excess of $75,000 for her injuries. The Court is confident, however, that Defendants have failed to demonstrate by a preponderance of the evidence that such an award is more likely than not.[6]

---

4. Defendants also cite to *Teajman v. Frigoletti.* In that case, the complaint alleged that the plaintiff "had sustained severe and serious personal injuries, both of a temporary and permanent nature, has and will in the future, require medical care and treatment, and as a result thereof...was caused to be incapacitated." Unlike *Carroll* and *Garofalo,* the allegations in *Teajman* do not appear to be readily distinguishable from the instant case. Nevertheless, this Court finds the reasoning of *Wal-Mart* to be more persuasive than that of *Teajman,* and, therefore, the Court declines to adopt the reasoning of *Teajman.*

5. Defendants note in their briefs that they attempted to enter into a stipulation with Plaintiffs whereby Plaintiffs would stipulate that their damages would not exceed $75,000, and Defendants would agree to remand the

case to state court. Understandably, Plaintiff's attorney indicated that although he believed it was unlikely that Plaintiff's damages would exceed $75,000, it would be inconsistent with his obligations to his client to enter into such a stipulation. Defendants urge the court to take this refusal into consideration in deciding the instant motion. The Court does not believe that counsel's refusal to enter into the stipulation sheds any light on the likelihood of Plaintiff's case exceeding the $75,000 threshold. In any event, this Court is not prepared to hold that the refusal of a plaintiff to enter into such a stipulation would require a federal court to retain jurisdiction over this case.

6. Because the Court reaches this conclusion under the more lenient preponderance of the evidence standard, there is no need to under-

### *Conclusion*

For the foregoing reasons, it is hereby ORDERED that this action be remanded to the Superior Court of New Jersey, Middlesex County.

take an analysis under the more demanding ''legal certainty'' standard.